Lester G. PARHAM, Jr., et al., Plaintiffs,

v.

Vincent J. HIX, et al., Defendants.

Civ. A. No. 83–122–ATH.

United States District Court,
M.D. Georgia,
Athens Division.

May 9, 1985.

James I. Roberts, Elberton, Ga., for plaintiffs.

Barry Lane Fitzpatrick, Danielsville, Ga., for defendants.

## ORDER

OWENS, Chief Judge.

On October 23, 1984, this court gave defendants the opportunity to enact an or-

dinance establishing standards for issuing malt beverage and wine licenses. Defendants have declined to do so. Therefore, for the reasons fully explained in the court's earlier order, defendants are hereby ENJOINED from failing to issue licenses to the plaintiffs.

Since this court's earlier order was entered, the Eleventh Circuit rendered its memorandum decision in *Scoggins v. Moore*, 747 F.2d 1466 (11th Cir.1984), *aff'g* 579 F.Supp. 1320 (N.D.Ga.1984). The *Scoggins* decision supports this court's ruling. In the district court opinion, Judge Murphy wrote:

> [T]he issue raised by the plaintiffs' equal protection claim becomes the following: whether the personal knowledge of the defendant of illegal malt-beverage sales at retail establishments in the county in which he is vested with the authority to grant or deny malt-beverage licenses, combined with the commissioner's denial of malt-beverage licenses to all formal applicants for such licenses, violates a formal applicant's right to equal protection. The Court holds that the applicant's equal protection rights are not violated by this practice because of a combination of two considerations. First, the defendant has no authority to close down malt-beverage establishments which operate illegally in Bartow County. This authority is vested solely in the Sheriff of Bartow County, Thurman.... Second, the plaintiffs have not demonstrated anything more than Moore's [the county commissioner's] knowledge of illegal malt-beverage sales in Bartow County. They have not, for example, shown, circumstantially or otherwise, that Moore took any affirmative steps to deter Thurman from closing establishments which illegally dispense malt-beverages.[5]

[5] The Court notes that the plaintiff has not alleged an actionable conspiracy between Moore and Thurman under either section 1983 or 1985(3). Had the plaintiffs done so, and had they supported such an allegation with competent proof, they may have prevailed on their motion for summary judgment....

**1.** A hearing on the merits of the case was held

*Scoggins*, 579 F.Supp. at 1324. The two considerations in *Scoggins* which caused the court to decide that applicant's equal protection rights were not violated weigh in the opposite direction in the present case.

First, in the present case the Sheriff of Madison County is a party defendant. Of course, the sheriff—not the commissioners—is the law enforcement officer of the county. Thus, all necessary parties are before the court and the plaintiffs can obtain complete relief.

Second, the plaintiffs here have proven that the county commissioners and the sheriff knew of illegal beer sales and that they conspired to ignore the sales. It is beyond doubt that the defendants knew the VFW Club sold beer. The defendants emphasize that they had no personal, firsthand knowledge of beer sales. Trial transcript at 75–76 (testimony of Commissioner Hart) and 84 (testimony of Commissioner Carey). However, just because no commissioner actually saw someone purchase a can of beer at the VFW Club does not mean that they did not have knowledge of the sale of beer. The VFW Club, located only one-half mile from the county courthouse, has been selling beer since 1948. Trial transcript at 16, 28–29, 32–33, 34, and 60. The Club sells approximately fifteen cases of beer a week. Trial transcript at 62. One commissioner even admitted at trial that he had heard that the VFW Club sold beer. Trial transcript at 75–77. It is incredible that the other two commissioners had not similarly heard of the beer sales.

At a minimum, the commissioners received notice of the sale of beer at the VFW Club upon service of the complaint in this case. *See* Complaint at paragraph 6. The commissioners were served on November 19, 1983, about one year before the hearing.[1] The sheriff also had actual knowledge of this lawsuit about that same time. Trial transcript at 77. Nevertheless, the VFW Club has been able to continue to sell beer throughout the pendency of this lawsuit. Trial transcript at 7, 23, and 43–

on October 18, 1984.

44. Neither the commissioners nor the sheriff has taken any steps to stop the Club from selling beer; indeed, no one has even investigated the allegation in the lawsuit that the Club in fact sells beer. Instead, the commissioners and the sheriff have chosen to deliberately ignore the Club's actions. The defendants cannot rely upon their lack of personal, first-hand knowledge of beer sales to insulate them from liability.

Unlike *Scoggins,* a conspiracy exists in the present case. The conspiracy is to ignore the sale of beer at the VFW Club. The circumstantial evidence of such a conspiracy is overwhelming. In particular, the open and notorious way in which the Club sold beer is very probative evidence.

It would be a great miscarriage of justice to allow the defendants to refuse to grant a beer and wine license to the plaintiffs while at the same time permitting other establishments to sell beer. The court's decision enjoining defendants from failing to issue licenses to the plaintiffs is both legally and ethically correct.

As stated earlier, defendants are ENJOINED from failing to issue licenses to the plaintiffs. The licenses shall be granted in accordance with O.C.G.A. § 3-3-2. Assuming the plaintiffs satisfy all licensing requirements established by state law, the defendants must issue the licenses within ten days. The defendants are directed to notify the court when they have done so.

If either plaintiff does not meet the standards established by the State of Georgia for receiving a malt beverage and wine license, the defendants may decline to grant that plaintiff a license. In that event, the defendants must notify the court within ten days that the plaintiff does not meet the state-law standards. The defendants must further notify the court of the standard which is not satisfied and the reason why the standard is not satisfied. The court will then review the defendants' actions to insure their good-faith compliance with this order. The clerk is directed to enter final judgment in this case.